### GEISER MFG. CO. v. TAYLOR.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. SALES—WARRANTY—ACCEPTANCE OF MACHINE.

   A contract for the sale of a threshing machine contained a warranty of the machine, which required the purchaser to give it a trial, and to give the seller notice of any defect, and an opportunity to remedy the defect or substitute another machine. The purchaser used the machine a few days, and returned it, and notified the seller that it was unsatisfactory, and refused to give it a further trial, though requested to do so by agents of the seller, who promised to remedy any defect. The purchaser swore that when the machine was started he told an agent of the seller that it ran too hard, and worked too slow, and that he requested the agent to stay with him, which the agent denied; and the latter swore that the machine did good work, and that the purchaser was satisfied with it, but that the purchaser's engine was poor and defective. The contract required the purchaser to use an engine making 200 revolutions per minute; and it was doubtful if the purchaser's engine did so. The trial court found that there had been a breach of warranty in the machine failing to thrash out all the grain, but the seller was not notified of such defect.

*Held*, that the conduct of the purchaser constituted an acceptance of the machine, and had waived alleged defects.

2. WITNESSES—IMPEACHMENT.

Where a witness is not first interrogated concerning inconsistent statements made out of court, it is error to admit evidence of such statements.

Appeal from special term, Seneca county.

Replevin by the Geiser Manufacturing Company against Thomas Taylor. From a judgment in favor of the defendant, the plaintiff appeals. Reversed.

On the 19th day of June, 1899, defendant, who was a grain thresher, signed and delivered to an agent of plaintiff an order, which was subsequently accepted by plaintiff, of which the following is a copy:

"The Geiser Manufacturing Company, Waynesboro, Franklin Co., Pa.: You will please ship for the undersigned to Farmer, Seneca county, New York, by Lehigh Valley, or the route you consider best and cheapest, if possible, on or about the —— day of ——, one class C New Peerless grain thresher, 30-inch cylinder, 46-inch separator, straw carrier and elevator, and wind stacker. It is understood that wind stacker for separator, if herein ordered, price is $250; or, if for huller, price is $150. Two fall's time, less 6 per cent., if paid cash. Engine to run above machine, if not Peerless, cylinder to be 7½-inch bore, 10½-inch stroke, fly wheel 40 inches in diameter, 200 revolutions per minute, for which I agree to pay $680, and on arrival of thresher from Waynesboro, as follows: One old Stevens' thresher, 5,397, on or before delivery; but, if not so paid, 11% to be added to price. Notes as follows to be given on delivery, said notes and mortgage to be made payable to the order of the Geiser Manufacturing Company on their blanks: Note due September 20, 1899, for $100, with no interest; note due January 1, 1900, for $144, with 6% interest, etc., from date of delivery; note due January, 1, 1901, for $143, with 6% interest, etc., from day of delivery; note due January 1, 1902, for $143, with 6% interest, etc., from day of delivery. And I further agree at the same time to give security as follows: A first lien on the above machine, and a first lien on a Stevens' 12 horse power traction engine, No. 402, and Garr Scott clover huller, No. 1,408. The above machine is hereby ordered subject to the conditions and warranty on the second page of this order, said condition and warranty being hereby made a part of this contract.

"Thomas Taylor, Farmer, Seneca county, New York. Order sent in by branch house, 53 South Division street, Auburn, N. Y.; J. A. Barnhart, manager.

"As a condition to the order on page one, it is fully understood and agreed as follows:

"First. That the machine herein ordered is to be promptly received by party ordering, but to remain the property of the Geiser Manufacturing Company until fully settled for. If from any cause the above machine is not settled for as agreed, the Geiser Manufacturing Company or their agent shall have the power to take possession of the same, and, if taken possession of, the purchaser shall deliver it free of charge to the place where received. The party ordering may have five days' time from first day's use for trial of the same, and agrees, in case it cannot be made to fill the warranty, to return same to place where received free of charge, at which time another may be furnished on same terms of warranty, or money, notes to the amount represented by the defective machine or part shall be returned, and no further claims be made on the Geiser Manufacturing Company.

"Second. That failure to make settlement on the terms herein agreed upon renders the whole of the purchase money due and payable; and the purchasers agree to pay all collection expenses, including 10 per cent. attorney's fee for collecting same.

"Third. That should there be any failure on the part of the Geiser Manufacturing Company to ship this machine on account of strikes of working men, or where the party is ascertained to be unworthy of credit or from causes be-

yond the control of said company, the said the Geiser Manufacturing Company are not in any wise to be liable for damages.

"Fourth. That this machinery is ordered subject to the following warranty and agreement, namely: That it is well built, of good material, and durable, if properly cared for, and with proper management it will do as good or better work than any other machine in the United States. Upon starting, if the purchaser follow the directions of the manufacturer, and is then unable to make it operate well, notice wherein it fails to conform to the warranty is to be given by the purchaser to the Geiser Manufacturing Company at Waynesboro, Pa., by wire and registered letter, and reasonable time allowed to get to it and remedy the defect, if any exists, and is of such a nature that a remedy cannot be suggested by letter, then the purchaser to render all necessary assistance. But if the purchaser fails to make it perform through improper management or want of skill, or if he neglect to observe the printed or written directions, then the purchaser is to pay all necessary expense incurred thereby; also if any part of the said machine fail in consequence of any defect, if the purchaser shall have observed the directions applicable to the management of such part, the Geiser Manufacturing Company are to furnish a duplicate of said part free of charge, except freight, on presentation at the factory, or to the agent through whom the said machine was bought, of the defective piece, clearly showing a flaw in the material. The failure of any separate machine or part thereof shall not affect the liability of the purchaser for any other separate machine that is not defective. Failure to settle for the machine in the manner provided, or failure to notify the Geiser Manufacturing Company as above provided, or keeping the machine longer than the six days above provided, or any abuse committed or suffered by the purchaser, shall be a waiver of the warranty, and a full release of the Geiser Manufacturing Company, without in any way affecting the liability of the party ordering. It is further understood and agreed that no agent or expert operator has any authority to in any way change this warranty, nor making any agreement aside from this contract that shall be binding upon the Geiser Manufacturing Company, and the signers hereto agree that they will not hold the Geiser Manufacturing Company responsible for any agreement not expressed on the face of this order."

This case involves the construction of this contract. The further material facts are stated in the opinion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Frank S. Coburn, for appellant.

John A. Milne, for respondent.

LAUGHLIN, J. This is a replevin action brought to recover the possession of the "old Stevens thresher, No. 5,397," referred to in the order, which constituted the contract. Plaintiff shipped the new threshing machine to defendant, and it arrived at Farmer station on July 3d. Defendant paid the freight, unloaded the machine, and took it home on July 4th. On the 20th day of July he started to use it threshing for a farmer named Rappleye, having previously notified plaintiff's agent, who was present and took charge of the machine that day. Defendant testified that, after the machine had been running a while, he told plaintiff's agent that he did not have power enough to run it, and was satisfied that he could not run it any further; that the agent replied that the power was sufficient, and that when it got "warmed up—loosened up—it would run a great deal different"; and that he requested the agent to continue with him on the next threshing job for a farmer named Howell, to which the agent replied that it would not be necessary, that defendant "knew enough

about the machine"; and to this defendant replied, "I don't know anything about it; you will have to instruct one of my men;" whereupon the agent did instruct one of defendant's men. Plaintiff's agent, who supervised the running of the machine at the first threshing, testified that the defendant's engine was a 10 horse power engine; that it pounded, and "was quite generally out of shape," and "was not in good shape to do a fall's threshing with"; that shortly after it started the water glass blew off, and he told defendant he thought it was hardly safe to run the engine without a water glass, to which defendant replied he could run it without; that the function of a water glass is to indicate the amount of water in the boiler, and that an engineer feels safer in running a machine to its full capacity with a water glass by which he can tell the state of the water; that the machine did perfect work, and at the time he left it it was doing good work; that the only difficulty was with the engine, which did not develop the power necessary to work rapidly, but that this would improve as the grain became dryer, and the new machinery became smooth from use; that defendant seemed satisfied with the working of the machine, and did not make any complaint whatsoever, or request the agent to remain longer, but, on the contrary, said he thought his men were capable of running it if the agent would instruct them, which he did. While threshing for Howell, the day after plaintiff's agent departed, defendant discovered that considerable wheat was carried out with the straw to the stack, but he did not observe that the machine was not doing good work while the agent was present. The only objection he claims to have made to the agent is that it ran hard, did not do the work rapidly, and that there did not seem to be sufficient power in the engine to get the speed up properly. After finishing Howell's threshing, defendant moved the machine to thresh for one McClvoy, but one of the wheels of the machine broke through the floor, and there was not room to operate it in the barn, and consequently he did no threshing there. Without trying the machine further, he took it to Farmer station on July 24th, and sent a telegram dated that day to plaintiff, saying: "Cannot accept machine. Don't give satisfaction. Will deliver to-day,"—and on the same day wrote plaintiff as follows:

"Farmer, N. Y., July 24, 1899.
"Geiser Mfg. Co.—Dear Sirs: Cannot accept the machine. It does not give satisfaction. Will deliver machine to Farmer station to-day.
"Yours, truly,        Thomas Taylor."

Upon receiving the telegram, plaintiff sent its agents who had negotiated the sale of the machine to call upon defendant. They met him returning home after leaving the thresher at the station, and told him that if there was anything wrong with the machine they would rectify it, and requested him to take it back and try it, which he declined to do; saying that he did not want anything more to do with it, and that he could not run it. They subsequently called upon him, and endeavored to persuade him to take it back, and give them a chance to see what, if anything, was the matter, and he said he would have nothing more to do with it, and he did not. Before receiving the machine, but after giving the order, defendant was in-

67 N.Y.S.—3

formed, by a man who had run a similar machine for two years, that his 12 horse power engine would not develop sufficient power to run it, and he called on plaintiff's agent for the purpose of countermanding the order, but was informed that the machine had already been shipped. Upon the trial defendant was asked what was his real objection to the machine, and his only answer was, "Three objections,— it was too high, it was too heavy, and it took too much power to run it." It will be seen that the contract required defendant to furnish an engine that would run the fly wheel at the rate of 200 revolutions per minute. According to defendant's own testimony, it is doubtful whether the engine was run so as to fulfill the contract in this regard. Defendant testified that he ran it with all the power he had, and it probably made 150 to 200 revolutions per minute. It further appeared that there were many of these machines in general use, giving satisfaction, and that there could be no difficulty in this machine that could not have been remedied, inasmuch as the parts of the machine were made and sold separately and kept in stock in Auburn. Defendant's testimony that this was a 12 horse power engine was hearsay and unsatisfactory, and no finding has been made on that subject.

The trial court found against plaintiff solely upon the ground that the threshing machine did not work properly, in that it suffered grain to pass out with the straw. As has been seen, this objection was not made known to plaintiff or its agent, and this difficulty did not occur while the agent was in charge. Under the contract of sale, plaintiff was entitled to written notice of any difficulty discovered by defendant in the working of the machine during the five days allowed for testing, and a reasonable opportunity to remedy the defect or to substitute another thresher. On account of his failure to test the machine properly, and notify plaintiff, in accordance with the terms of the contract, of any defect in its working revealed by such test, we think defendant is chargeable with having accepted it. Prior to the commencement of the action, plaintiff duly demanded of defendant the execution of the notes and the delivery of the old thresher, which demand was refused. Evidence was erroneously received of declarations of witnesses made out of court inconsistent with their testimony, without such witnesses having been first interrogated concerning the same, but the foregoing considerations require a reversal upon the merits.

The judgment appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.